STARK et al. v. BROWN et ux. (No. 155.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 22, 1917.)

1. ADVERSE POSSESSION ☞51 — CONTINUITY OF POSSESSION — JUDGMENT AGAINST TENANT.

A suit prosecuted to effect against a tenant in possession within the ten-year statute of limitations breaks the continuity of the landlord's adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 238, 239.]

2. APPEAL AND ERROR ☞997(3) — REVIEW — PEREMPTORY INSTRUCTION — CONFLICTING EVIDENCE.

Where in view of conflicting evidence it cannot be said that special findings were unsupported, the court's refusal to give peremptory instruction will not be disturbed, although the

appellate court might have come to a different conclusion from the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4024.]

3. TRIAL ☞125(4)—ARGUMENT OF COUNSEL—APPEAL TO PREJUDICE AGAINST LANDOWNERS.

Counsel's argument to jury that "these corporations and big rich landowners want to buy up all the land in this county and hold it and let it rot and keep the common people from getting any of it and let them rot" was cause for reversal where the court did not restrain counsel or direct jury not to consider statements, although the appellate court cannot say whether the jury was prejudiced thereby.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 306.]

4. TRIAL ☞125(1)—ARGUMENT OF COUNSEL—PREJUDICIAL REMARKS OUTSIDE THE RECORD.

The practice of counsel going outside of the record in argument and using language the only purpose of which could be to prejudice the jury is condemned.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 303.]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by Emanuel Brown and wife against W. H. Stark and others. Defendants appeal from judgment for plaintiffs and denial of motion for new trial. Reversed and remanded.

Holland & Holland, of Orange, for appellants. Wightman & Hancock, of Newton, for appellees.

BROOKE, J. The following agreement filed by the parties states the nature of the case:

"It is agreed by and between all parties hereto, acting through their attorneys of record: I. Plaintiffs claim said land sued for and described in their petition by limitation, and not by any record title, and the sole issue in said cause as to plaintiffs' rights is their right to recover the same by virtue of the statutes of limitation as charged in plaintiffs' petition.

"II. Defendants own, subject to plaintiffs' title by limitation, the record title to said land from the sovereignty by direct chain to themselves regular and in legal form, and no proof of such fact need be made on the trial hereof, and that the land was patented January 1, 1885."

The suit was filed in trespass to try title by appellees against appellants to recover 160 acres, a part of International & Great Northern Railroad Company survey No. 5, certificate 3880, abstract 246, Newton county, based upon their occupancy claimed to be sufficient to support the ten-year statute of limitation. The section of land involved contains about 388 acres, and is of irregular shape, about 90 acres thereof lying below a point where the two adjoining surveys come within 20 varas of each other, and from that point extending out in irregular shape around such adjoining surveys.

The Stewart survey is one of the adjoining surveys to the section in dispute. Plaintiffs have never occupied, by actually residing upon, the land sued for, but have during all of the time lived upon the Stewart survey, upon which survey there has been reserved for them for more than 40 years a tract of 20 acres by their former owners, and they were permitted to live upon and cultivate this tract of land.

Appellees' claim of occupancy, cultivation, and use under the statute is based upon the occupancy, cultivation, and use by their tenants, Hannah Rhone, B. Snell, and Jim Brown, as hereinbefore recited, and they do not claim to have ever occupied, cultivated, or used the land otherwise for the required length of time. The tenancy of the parties is not evidenced by any writing, and is based on verbal attornment from year to year between the landlord and tenant.

On August 9, 1910, defendants, here as plaintiffs, brought suit against Hannah Rhone and Jim Brown, being the persons in possession, to recover International & Great Northern survey No. 5, the plaintiffs' petition in that case describing what may be called the south part of section No. 5. In 1913 a judgment by agreement was entered in plaintiffs' favor for the land in dispute.

The instant case was tried before a jury on special issues, and resulted in a judgment for appellees for 160 acres of land to be set apart to them out of the survey, and to include their improvements, and, a motion for new trial being overruled, an appeal has been properly perfected.

The issues presented to the jury were as follows:

"Question No. 1. Have the plaintiffs, Emanuel Brown and Ellen Brown, either in person or through tenants, had and held adverse and peaceable possession of the land described in plaintiffs' petition, being a portion of International & Great Northern Railroad Company section No. 5, in Newton county, Tex., using, cultivating, and enjoying the same, and claiming the same for a period of ten consecutive years prior to the filing of this suit, by a separate inclosure or inclosures under fence entirely on said section No. 5?" The jury answered: "Yes."

"Question No. 2. Was the possession and acts of the plaintiffs, Emanuel Brown and Ellen Brown, if any, of International & Great Northern Railroad Company, section No. 5, in Newton county, Tex., or a part thereof, of such a nature and character as to put a reasonably prudent person on notice that Emanuel Brown and Ellen Brown were occupying, either themselves, or through a tenant, or tenants, and claiming 160 acres of said section No. 5?" The jury answered: "Yes."

"Question No. 3. Do you believe from the evidence that B. Snell, Hannah Rhone, and Jim Brown while occupying the land sued for in this case occupied the same, claiming the same, or not?" The jury answered: "No."

"Question No. 4. Bearing in mind the definition heretofore given you of adverse possession and in connection with such definition, you are instructed that the word 'hostile,' as therein used, means an occupancy of the premises under a holding by the possessor as owner, and therefore against all other claimants of the land. Bearing in mind the foregoing definition, do you believe from the evidence in this case that the occupancy of the land sued for by plaintiffs has been continuous for any period of ten con-

secutive years before the institution of this suit?" The jury answered: "Yes."

"Question No. 5. * * * Bearing in mind the foregoing instruction, do you believe from the evidence that plaintiffs had and held for ten consecutive years prior to the institution of this suit visible possession of the land sued for?" The jury answered: "Yes."

"Question No. 6. Do you believe from the evidence that H. J. Lutcher was a person of unsound mind from February, 1902, to the time of his death in 1914?" The jury answered: "Yes."

"Question No. 7. During what year do you believe from the evidence the first house occupied by B. Snell on the land in controversy was built?" The jury answered: "1898."

"Question No. 8. During what year do you believe from the evidence the improvements, clearing, and fencing at the Snell place was done?" The jury answered: "1899."

"Question No. 9. During what year do you believe from the evidence the clearing and fencing of what is called the 'Jim Brown field' was done?" The jury answered: "1899."

"Question No. 10. During what years, if any, did B. Snell occupy, cultivate, and use any portion of the land sued for?" The jury answered: "1909, 1911, 1912, 1913, 1914, 1915."

"Question No. 11. Do you believe from the evidence that Emanuel Brown and Ellen Brown ever resided on or occupied any portion of the land sued for?" The jury answered: "Yes."

The action of the lower court is assailed in refusing to give special charge No. 1, as requested by defendants, which was as follows:

"In this case you are instructed that, under the evidence introduced, the plaintiffs are not entitled in law to recover any portion of the land sued for, and you are therefore instructed to return a verdict in favor of the defendants."

Appellants' contention is that the undisputed evidence in the case demanded the giving of such peremptory instruction.

[1] We have gone over the record carefully, and while the appellants' proposition that "a suit prosecuted to effect against the tenant in possession within ten years from the adverse entry by the landlord breaks the continuity of the possession and avoids the defense of ten-year limitation when asserted by the landlord against the holder of the title," is a correct legal proposition, still we cannot agree with the contention of appellants that the assignment should be sustained.

[2] The issue of limitation was a sharply contested issue, and a great deal of testimony pro and con was introduced before the jury on the question of whether or not the plaintiffs had made out their plea of ten-year limitation before suit was filed by appellant in 1910 for the possession of a part of the survey against Hannah Rhone and Jim Brown. The issue was made and submitted to the jury, and they have found against the appellant. Perhaps, this court, if the case had been tried originally in this tribunal, might not have reached the same conclusion on the evidence. However, we cannot say that there is no evidence to support the findings, and, the record being in this attitude, we are constrained to overrule this assignment.

[3] The second assignment is as follows:

"The court erred in permitting counsel for plaintiffs to use in argument to the jury the prejudicial and inflammatory argument as shown by bill of exceptions No. 5, and failing and refusing to instruct the jury, upon request, not to regard the same, and refusing to stop counsel in the use of such argument after the objection made thereto at the time."

Appellants urge the proposition that:

"Unwarranted and inflammatory argument not justified by anything in the record and permitted by the court over timely objection is reversible error where the evidence on the trial would warrant a verdict contrary to the one rendered."

As reflected by the record, the bill shows the following to have occurred:

"Be it remembered that on the trial of the above-entitled cause, and while plaintiff's counsel C. C. Wightman was addressing the jury in behalf of plaintiffs, and while so addressing the jury, he used in connection with other language the following language, to wit: 'Gentlemen of the jury, these corporations and big rich landowners want to buy up all the land in this county and hold it and let it rot and keep the common people from getting any of it and let them rot.' To which argument and language the defendant at the time objected and asked the court to restrain counsel in such argument and instruct the jury not to consider same, but the court declined to interfere or stop counsel, and counsel was permitted to continue without restraint from the court, and the court refused to instruct the jury not to consider said argument or be influenced thereby, to which the defendants at the time in open court excepted, and now here tender this their bill of exceptions."

There can be no question as to the object of counsel in using this language. Whether or not it really influenced the minds of the jury we have no means of knowing. As said in the case of Colorado Canal Co. v. Sims, 82 S. W. 531, in passing upon a case in which objectionable language had been used, as follows:

"Now, gentlemen of the jury, I do not ask you to bring in a verdict against this defendant because it is a corporation, and now, gentlemen of the jury, I do not ask you to bring in a verdict against this defendant because it is an irrigation corporation, though God knows the irrigation corporations of this country have swindled every man that have had any dealings with them, and to-day are attempting to swindle and rob every tenant working under them, and the evidence shows that this corporation is no better than any other corporation in this country."

"Under the decision of the Supreme Court in Tel. Co. v. Perry, 95 Tex. 645, 69 S. W. 131, we must take the bill of exceptions as sufficient to authorize us to consider the objections to the words used in the argument of plaintiff's counsel, set forth in said bill. As we have before intimated, the state of the evidence developed on the trial is such as would authorize a verdict for either party, which would not be disturbed on appeal. There can be no doubt that the use of the language complained of was as unwarranted and reprehensible as language could be. We can imagine nothing that would justify it, and there is nothing in the record that tends to show an intimation of anything to palliate it. Its only purpose could have been to prejudice the jury against the defendant, and influence them by such prejudice in finding their verdict. And we are not able to say, when the state of the evidence is considered, that the use of such language, not recanted by plaintiff's counsel, and unrebuked by the trial court, did not have the

effect upon the jury in finding their verdict that it was evidently designed by plaintiff's counsel to have. This brings the case within the rule laid down in Railway Co. v. Musick [33 Tex. Civ. App. 177] 76 S. W. 221."

In the Musick Case, supra, the following language is used:

" 'Counsel always takes the risk of forfeiting an otherwise good judgment when such course is pursued, and we think the rule ought to be enforced in this instance.' Appellee insists, however, that ' * * * the error was harmless, as the verdict of the jury was not excessive, and is supported by, and not against, the preponderance of the evidence.' While we have not felt that we should disturb the judgment on the ground of its being excessive, although complained of as such, and although it is apparently at least liberal, in view of the fact that appellee had no bones broken, and that the physicians testifying expressed the opinion that appellee would finally get well, it is nevertheless to be noted that the argument complained of does not relate so much to an enlargement in the amount of the judgment. It seems more appropriately adapted to the issue of whether appellee was entitled to any judgment, to discredit appellant's testimony in support of an absolute defense; and it is on this ground that we base our conclusion, rather than on the ground of a tendency to inflame the minds of the jury, and hence possibly increase the size of the judgment."

[4] We have recently animadverted upon the practice of counsel going outside of the record, and using language which could be used for no other purpose than to influence the jury, and in the recent case of Kirby Lumber Co. v. Youngblood, 192 S. W. 1106, not yet officially reported, we took occasion to condemn such practice. The assignment is sustained.

Inasmuch, therefore, as the case will have to be again tried, on account of the error above shown, we deem it unnecessary to pass upon the remaining assignments, and for the error complained of this cause is reversed, and remanded to the lower court for a new trial.

It is so ordered.